IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. RISK LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| CHUBB GLOBAL MARKETS SYNDICATE 2488, | ) | 3:20-CV-2134-G |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the parties' cross-motions for summary judgment. Plaintiff U.S. Risk, LLC ("U.S. Risk") moves for summary judgment on its declaratory judgment claims and the defendant's counterclaims. Defendant Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488 ("CUAL") moves for summary judgment on its counterclaims for breach of contract, breach of fiduciary duty, and negligence, and on U.S. Risk's declaratory judgment claims. Additionally, U.S. Risk has moved to strike the affidavit of Thomas Beazley ("Beazley"). CUAL relies on this affidavit to establish damages as an element of its counterclaims. The court will therefore address that motion in this order as well.

For the reasons discussed below, the cross-motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**.  U.S. Risk's motion on CUAL's contract and negligence counterclaims is **GRANTED**.  U.S. Risk's motion on the remaining claims is **DENIED.**  CUAL's motion on its counterclaim for breach of fiduciary duties is **GRANTED IN PART** on the ground that U.S. Risk owed a fiduciary duty to CUAL, but **DENIED IN PART** as to the remaining elements of that counterclaim.  Additionally, CUAL's motion on U.S. Risk's declaratory claims is **GRANTED**.

## I. BACKGROUND

The issue in this suit is whether U.S. Risk improperly underwrote an employment liability insurance policy on CUAL's behalf.  *See* Defendant Chubb Underwriting Agencies Limited for and on Behalf of Syndicate 2488's Motion for Summary Judgment ("CUAL's Motion for Summary Judgment") (docket entry 60) ¶¶ 1-2; Plaintiff's Motion for Summary Judgment and Statement of Undisputed Material Facts in Support Thereof ("U.S. Risk's Motion for Summary Judgment") (docket entry 62) at 2-3.  U.S. Risk is a United States-based limited liability company that was authorized to underwrite various types of insurance polices on CUAL's behalf.  Amended Complaint Against Chubb Underwriting Agencies by U.S. Risk ("U.S. Risk's Amended Complaint") (docket entry 38) ¶ 3.  CUAL is an England-based limited liability company that acts as the managing agent of Syndicate

- 2 -

2488, "an unincorporated Lloyd's insurance syndicate authorized as an eligible surplus lines insurer in the State of Texas."  Defendant Chubb Underwriting Agencies for and on Behalf of Syndicate 2488's Amended Answer to Plaintiff's Amended Complaint and Amended Counterclaim ("CUAL's Amended Answer and Counterclaim") (docket entry 58) ¶ 47.

In 2013, U.S. Risk and CUAL entered into an agreement known as the Binding Authority Agreement ("BAA"), which authorized U.S. Risk to underwrite various classes of commercial insurance, including employment practices liability insurance.  *See* U.S. Risk's Amended Complaint ¶¶ 9-10; CUAL's Amended Answer and Counterclaim ¶¶ 9-10  This agreement was renewed for a term dating June 1, 2017, to June 1, 2018.  *See* U.S. Risk's Amended Complaint ¶ 9; CUAL's Amended Answer and Counterclaim ¶ 9.

In September 2016, a substance abuse treatment center in California known as Passages Malibu PHP, LLC, or Grasshopper House, LLC, (collectively, "Passages") applied for employment practices liability insurance with U.S. Risk through a broker. *See* U.S. Risk's Motion for Summary Judgment at 7-10; Defendant's Brief in Support of its Motion for Summary Judgment ("CUAL's Brief in Support") (docket entry 61) ¶ 7.  U.S. Risk assigned William Duvall ("Duvall") to act as the underwriter for Passages' account to review this application ("September 2016 application") and to quote pricing and other terms.  U.S. Risk's Motion for Summary Judgment ¶ 14.  In

the September 2016 application, Passages provided a claims history for fourteen

lawsuits, including the following information:

> Cynthia Begazo v. Passages Malibu PHP, LLC et al., LASC
> Case No.:  BC 595150.  Ms. Begazo filed her Complaint in
> September 2015 alleging claims of age discrimination,
> disability discrimination, retaliation, and wrongful
> termination amongst others.  Ms. Begazo is represented by
> Carney Shegerian of Shegerian & Associates.  Gordon &
> Rees is currently defending the action that is set for trial
> beginning on September 12, 2016.  Defense fees and costs
> billed to date total $58,384.65 and there are currently
> fees/costs that are work in progress.

Defendant Chubb Underwriting Agencies Limited for and on Behalf of Syndicate

2488's Sealed Appendix in Support of its Motion for Summary Judgment ("CUAL's

Appendix to Motion") (docket entry 63) at 000390 (September 2016 application).

U.S. Risk did not request additional information regarding the *Begazo* suit or any

other suit listed in the September 2016 application.  See *id*. at 000280-284 (Duvall's

deposition).  U.S. Risk quoted coverage for Passages based on the September 2016

application, but no policy was issued.  CUAL's Brief in Support ¶ 10; *see also* CUAL's

Appendix to Motion at 000294-297 (Duvall's deposition).

Passages submitted a second application for employment practices liability

insurance on March 22, 2017 ("March 2017 application").  *See* U.S. Risk's Amended

Complaint ¶ 13; CUAL's Brief in Support ¶ 12.  The March 2017 application

included supplemental forms for eight of the lawsuits identified in the September

2016 application, including the *Begazo* suit.  *See* CUAL's Appendix to Motion at

000449-707.  On the *Begazo* suit's supplemental claim form, Passages indicated that the "motion for summary adjudication was successful and limited cause of action went to trial."  CUAL's Appendix to Motion at 000488.  The March 2017 application also noted the *Begazo* suit was still "in suit" when the application was completed.  *Id*.  But the March 2017 application did not include the result of the "limited cause of action [that] went to trial."  See *id*.  In fact, a jury had returned a verdict in favor of Begazo and against Passages on March 3, 2017.  *Id*. at 000395.  The jury had awarded Begazo $1,829,160 almost three weeks before Passages submitted the March 2017 application to U.S. Risk.  See *id*.

Duvall, the underwriter assigned to Passages' account, reviewed the March 2017 application, but he did not recall asking for more information about the *Begazo* suit or any other lawsuit pending against Passages.  *Id*. at 000299-301.  U.S. Risk once again quoted coverage to Passages, but a policy was not issued.  See *id*. at 000708-712; 000713-721.  U.S. Risk later offered an updated quote to Passages which reflected an increase in premiums, but again no policy was issued.  *See* Plaintiff's Appendix in Support of its Motion for Summary Judgment ("U.S. Risk's Appendix to Motion") (docket entry 62:2-62:31) at 000991-992.

Then, in June 2017, Passages submitted a third application ("June 2017 application") to bind a policy effective June 14, 2017.  CUAL's Brief in Support ¶ 16; CUAL's Appendix to Motion at 000713-715; 000722-726.  U.S. Risk issued an

- 5 -

employment practices liability insurance policy to Passages (hereinafter, "the policy" or "the Passages policy"), which was effective from June 14, 2017, through November 12, 2018. *See* U.S. Risk's Amended Complaint ¶¶ 16-17; CUAL's Amended Answer and Counterclaim ¶ 16; CUAL's Appendix to Motion at 000787.

Subsequently, by August 2018, four of Passages' former employees had individually filed suit against Passages (hereafter, "the four lawsuits"). *See* U.S. Risk's Amended Complaint ¶¶ 20-22; CUAL's Brief in Support ¶ 20. The four lawsuits alleged various employment law claims, and barring an effective defense, the policy would cover these lawsuits because they arose during the policy's term. *See* CUAL's Amended Answer and Counterclaim ¶ 72; *see also* CUAL's Appendix to Motion at 000733-737 (CUAL's internal coverage report). The first lawsuit was filed by Maureen Fahey ("Fahey"), Passages' former senior vice president. CUAL's Appendix to Motion at 000734. Fahey alleged violations of the California Labor Code, retaliation, wrongful termination, discrimination on the basis of sex, and sexual harassment. *Id*. The second suit was filed by John Zeller ("Zeller"), Passages' former chief financial officer and Fahey's husband. *Id*. at 000734-735. Zeller alleged violations of the California Labor Code, retaliation, wrongful termination, defamation, and gender discrimination based on his association with Fahey. *Id*. The third suit was filed by Suzanne Schuda ("Schuda"), Passages' former director of quality and informatics, and she alleged violations of the California Labor Code,

retaliation, wrongful termination, discrimination on the basis of sex and age, and

sexual harassment.  *Id*. at 000735-736.  Last, the fourth employment liability suit

was a counterclaim raised by Carolyn Hazuka ("Hazuka") when Passages filed suit

against Hazuka for embezzlement and other property claims.  See *id*. at 000736.

Hazuka was Passages' environmental programs coordinator, and she alleged violations

of the California Labor Code, violation of the Fair Employment and Housing Act,

sexual harassment, and wrongful termination in response to Passages' suit against her.

*Id*. at 000737.

CUAL defended Passages against these four suits pursuant to its understanding

of its duty to defend under California law.  *See* CUAL's Brief in Support ¶ 22; *see also*

CUAL's Appendix to Motion at 000776-777.  Despite Passages omitting the *Begazo*

verdict on its applications, CUAL did not attempt to rescind the policy.  *See* U.S.

Risk's Motion for Summary Judgment ¶ 67.  Ultimately, CUAL paid $2,000,000, the

policy limit, to defend and settle the four lawsuits.  *See* CUAL's Amended Answer

and Counterclaim ¶ 73; *see also* CUAL's Appendix to Motion at 000781 (Beazley's

declaration).

U.S. Risk filed its original complaint on August 11, 2020.  *See* U.S. Risk's

Original Complaint (docket entry 1).  On October 13, 2020, CUAL filed its original

answer and counterclaim to U.S. Risk's original complaint.  *See* Defendant Chubb

Underwriting Agencies Limited for and on Behalf of Syndicate 2488's Answer,

Affirmative Defenses and Counterclaim to Plaintiff's Complaint (docket entry 7).

Additionally, on October 13, 2020, CUAL filed a motion to dismiss. *See* Defendant

Chubb Underwriting Agencies Limited for and on Behalf of Syndicate 2488's Motion

to Dismiss under Rule 12(b)(6) (docket entry 9).  U.S. Risk filed its original answer

to CUAL's counterclaim on November 3, 2020. *See* Plaintiff's Answer to Defendant's

Counterclaim (docket entry 12).  On November 3, 2020, U.S. Risk also filed a

response to CUAL's motion to dismiss. *See* Plaintiff's Suggestions in Opposition to

Defendant's Motion to Dismiss (docket entry 13).  CUAL filed a reply in support of

its motion to dismiss on November 17, 2020. *See* Defendant Chubb Underwriting

Agencies Limited for and on Behalf of Syndicate 2488's Reply Brief in Support of

Motion to Dismiss under Rule 12(b)(6) (docket entry 14).  On December 15, 2020,

the court denied CUAL's motion to dismiss. *See* Electronic Order (docket entry 15).

On June 29, 2021, U.S. Risk filed an unopposed motion for leave to file an

amended complaint. *See* Unopposed Motion for Leave to File Amended Complaint

with Suggestions in Support (docket entry 36).  The court granted U.S. Risk's

motion on June 29, 2021, *see* Order Granting Motion for Leave to File Amended

Complaint (docket entry 37), and U.S. Risk filed its amended complaint on the same

day, *see* U.S. Risk's Amended Complaint.  On July 19, 2021, CUAL filed an answer

to U.S. Risk's amended complaint. *See* Defendant Chubb Underwriting Agencies for

and on Behalf of Syndicate 2488's Amended Answer and Counterclaim to Plaintiff's Amended Complaint (docket entry 39).

Then, on February 22, 2022, CUAL filed an opposed motion for leave to file an amended counterclaim. *See* Defendant's Partially Opposed Motion for Leave to Amend Counterclaim and Opposed Motion for Leave to Designate Experts and Supporting Brief (docket entry 52). U.S. Risk filed its response to CUAL's motion on March 7, 2022, *see* Plaintiff's Suggestions in Opposition to Defendant's Partially Opposed Motion for Leave to Designate Experts (docket entry 54), and CUAL filed its reply in support of its motion on March 9, 2022, *see* Defendant's Reply Supporting its Partially Opposed Motion for Leave to Amend Counterclaim and Designate Experts (docket entry 56). The court granted CUAL's motion for leave to file an amended counterclaim on March 10, 2022. *See* Order on Motion for Leave to Amend Counterclaim and Opposed Motion for Leave to Designate Experts (docket entry 57). CUAL filed its amended answer and counterclaim to U.S. Risk's amended complaint on March 10, 2022. *See* CUAL's Amended Answer and Counterclaim. On March 11, 2022, U.S. Risk filed its answer to CUAL's amended counterclaim. *See* Plaintiff's Answer to Defendant's Amended Counterclaim ("U.S. Risk's Answer to Amended Counterclaim") (docket entry 59).

As of the date of the amended pleadings, U.S. Risk seeks a declaration that: (1) the Passages policy provided no coverage for the four lawsuits; (2) U.S. Risk fully

discharged its contractual duties under the BAA; and (3) CUAL voluntarily paid Passages for the four lawsuits.  U.S. Risk's Amended Complaint ¶¶ 27-36.  In response, CUAL asserts counterclaims for breach of contract, breach of fiduciary duties, and negligence.  CUAL's Amended Answer and Counterclaim ¶¶ 44-83. CUAL contends that by writing the Passages policy, U.S. Risk breached the BAA and its fiduciary duties, and U.S. Risk also negligently performed its duties under the BAA.  *Id.*

On March 15, 2022, CUAL and U.S. Risk filed cross-motions for summary judgment.  *See* CUAL's Motion for Summary Judgment; U.S. Risk's Motion for Summary Judgment.  On April 5, 2022, CUAL and U.S. Risk both responded to the other party's motions.  *See* CUAL's Response; U.S. Risk's Response.  Both parties filed reply briefs on April 26, 2022.  *See* CUAL's Reply; U.S. Risk's Reply.  The motions are ripe for decision.

## II.  ANALYSIS

### A.  Objections to the Summary Judgment Evidence

U.S. Risk argues that some of the evidence presented by CUAL will be inadmissible at trial and is therefore not properly considered on a motion for summary judgment.  The court will first consider this objection.

Specifically, U.S. Risk argues that Beazley's declaration is without foundation and amounts to an impermissible lay opinion.  Response of the Plaintiff to

Defendant's Motion for Summary Judgment ("U.S. Risk's Response") (docket entry 64) at 3.[1]  U.S. Risk contends that Beazley's declaration is CUAL's only evidence of damages in this suit, and if the declaration is excluded, CUAL could not succeed on its counterclaims.  *Id*.  CUAL disputes that Beazley's declaration includes impermissible lay opinion because the declaration demonstrates that Beazley's role in handling financial lines claims "allows him to appreciate what costs are reasonable to defense employment practices lawsuits in California."  Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488's Reply in Support of its Motion for Summary Judgment ("CUAL's Reply") (docket entry 73) ¶ 32.

Non-expert witnesses may testify in the form of opinions or inferences in limited circumstances under Federal Rule of Evidence 701.  Rule 701 only applies "[i]f the witness is not testifying as an expert[.]"  FED. R. EVID. 701.  In other words, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."  *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996) (citing *Brady v. Chemical Construction Corporation*, 740 F.2d 195, 200 (2nd Cir. 1984)).

---

[1]    Citations to U.S. Risk's Response are generally to specific paragraphs, but the response brief is not consistently numbered until page 3, and the objection to Beazley's deposition is made before the paragraphs are consistently numbered.  *See* U.S. Risk's Response at 3.

Non-expert testimony must be "based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the [fact finder]." *Texas A&M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (internal citations omitted).  The witness must have "personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Mississippi Chemical Corporation v. Dresser-Rand Company*, 287 F.3d 359, 373 (5th Cir. 2002).  Rule 701 allows employees to testify on matters that relate to their business affairs, including industry practices and pricing, without qualifying as an expert.  *Texas A&M Research Foundation*, 338 F.3d at 403 (citing *Tampa Bay Shipbuilding & Repair Company v. Cedar Shipping Company, Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003)).

Beazley, according to his declaration, is a financial claims adjuster for Chubb Services U.K. Limited and Chubb European Group.  CUAL's Appendix to Motion at 000779-782 (Beazley's declaration).  Beazley handles financial lines claims involving Chubb European Group SE and its affiliates, including CUAL, and he specifically worked on Passages' claims relating to the four lawsuits.  *Id*. at 000779.  Because Beazley's declaration is based on his personal knowledge of the four lawsuits and experience handling similar claims through his employment, *id*. at 000779-782, Beazley does not need to be qualified as an expert and the court will consider his declaration as summary judgment evidence.

- 12 -

B.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Id*. at 323-24.  To carry this burden, the opponent must do more than simply show "some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  Instead, it must show that the evidence is sufficient to support a resolution of the factual issue in its favor.  *Anderson*, 477 U.S. at 249.  All of the evidence must be viewed, however, in a light most favorable to the motion's opponent.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).

The court cannot, however, in the absence of proof "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (en banc) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990) ("It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege.")). Further, when conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993).

In reviewing cross-motions for summary judgment, courts examine "each party's motion independently" and view "the evidence and inferences in the light most favorable to the non-moving party." *JP Morgan Chase Bank, N.A. v. DataTreasury Corporation*, 823 F.3d 1006, 1011 (5th Cir.) (quoting *Morgan v. Plano Independent School District*, 589 F.3d 740, 745 (5th Cir. 2009), *cert. denied*, 561 U.S. 1025 (2010)), *cert. denied*, -- U.S. --, 137 S. Ct. 501 (2016).

## C. Breach of Contract Claim

To establish a breach of contract claim under Texas law, a claimant must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the [claimant]; (3) breach of contract by the defendant; and (4) damages sustained by the [claimant] as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). The parties do not dispute the first two elements. *See*

- 14 -

CUAL's Amended Answer and Counterclaim ¶¶ 52-53; *see also* U.S. Risk's Answer to Amended Counterclaim ¶¶ 5-6.  Accordingly, only the latter two elements are disputed, and the court will first determine whether U.S. Risk breached the contract.

CUAL contends that U.S. Risk breached the BAA by failing to obtain a completed application within thirty days of issuing the policy to Passages.  CUAL's Brief in Support ¶ 47.  According to CUAL, U.S. Risk bound coverage based on either Passages' March 2017 or June 2017 applications.  *Id*.  Because the March 2017 application was completed more than thirty days before the policy's effective date and the June 2017 application was missing information, U.S. Risk breached the BAA's underwriting requirements.  *Id*.  Further, U.S. Risk breached the BAA by binding the policy without "five years of loss experience," including the *Begazo* verdict.  *Id*. ¶ 48.  By U.S. Risk's vice president's admission, the policy would have not been issued had U.S. Risk known of the outcome of the *Begazo* suit.  CUAL's Appendix to Motion at 000729 (Jacob's October 2018 email).  In an email from U.S. Risk's vice president Crystal Jacobs ("Jacobs") to CUAL's attorney, Jacobs admitted: "Had we known that they had an actual judgment/settlement on the [*Begazo*] matter, we would have declined the risk."  *Id.*

In its own motion, U.S. Risk contends that the BAA does not require U.S. Risk to independently investigate applications for employment practices liability insurance.  Memorandum of Law in Support of Plaintiff's Motion for Summary

Judgment ("U.S. Risk's Brief in Support") (docket entry 62:1) at 7. Additionally, U.S. Risk argues that the underwriting guidelines are not part of the contract and as guidelines they relate to only the pricing of the insurance policy, which U.S. Risk correctly took into consideration in issuing the policy. *Id*. at 9-11.

To determine the parties' rights and obligations under a contract, the court looks to the terms of the contract. The court will first consider whether the underwriting guidelines are a part of the BAA; then it will address the cross-motions on the breach of contract claim.

### 1. *Rights and Obligations Under the BAA*

As a threshold matter, U.S. Risk is incorrect when it contends that the underwriting guidelines are not a part of the BAA. U.S. Risk argues that any failure to obtain a completed application is not a breach of the BAA because it would breach the underwriting guidelines, which are separate from the BAA. U.S. Risk's Brief in Support at 9-11. To support this theory, U.S. Risk relies on *Zimmerman v. H.E. Butt Grocery Company*, 932 F.2d 469, 471 (5th Cir.) (per curiam), *cert. denied*, 502 U.S. 984 (1991), for the proposition that guidelines are not part of contracts "when the parties have not expressly agreed that the procedures contained in these materials are binding."[2]

---

[2] Additionally, *Zimmerman* is factually and legally distinguishable because the issue in *Zimmerman* is whether an employee manual constituted a contract in an at-will employment relationship. 932 F.2d at 471. The Fifth Circuit held that

This reliance is misplaced because the BAA incorporates the underwriting guidelines, making it a part of the BAA. *See* CUAL's Appendix to Motion at 000001-122 (the BAA). There are three main sections of the BAA: the BAA, see *id*. at 000023-62, the BAA's schedule, see *id*. at 000004-22, and the underwriting guidelines, see *id*. at 000063-122. The BAA's schedule "forms part of and incorporates by reference [the BAA]," *id.* at 000004, and for the "BASIS FOR THE CALCULATION OF GROSS PREMIUMS" and "DEDUCTIBLES AND/OR EXCESSES," the schedule requires policies to follow the "[u]nderwriting guidelines attached." See *id*. at 000006. The attached guidelines are incorporated by reference into the contract, including the completed application requirement for employment liability insurance policies. *Id*. at 000107. U.S. Risk cannot reasonably assert that it "did not expressly agree that guidelines as to pricing terms would become part of the contract," U.S. Risk's Brief in Support at 10, when the BAA requires U.S. Risk to

---

"[c]ompliance, or attempted compliance, with guidelines for discipline and discharge found in its employee manual should not be turned against an employer as evidence that it treated the manual as a contract." *Id*. at 472. By contrast, there is a written contract in this case, and merely calling a portion of that contract "guidelines" does not invoke the same "Catch-22" policy concerns that the Fifth Circuit was concerned with in *Zimmerman*. See *id*. ("[I]f an employer follows the guidelines in disciplining or discharging an employee, the employee could argue that the employer thereby treated the manual as a contract; but if an employer does not follow the guidelines, then the employee could excoriate the employer for failing to follow guidelines that it represented it would follow.").

follow the "[u]nderwriting guidelines attached."  CUAL's Appendix to Motion at
000006.

Therefore, under the BAA, U.S. Risk was obligated to obtain "[a] completed
application signed and dated within thirty dates of the effective date," see *id*. at
000107, for employment practices liability policies.  The court will next address
whether U.S. Risk fulfilled this obligation.

### 2. *Whether U.S. Risk Obtained a Completed Application*

As stated above, CUAL contends that U.S. Risk did not obtain a completed
application from Passages within thirty days of the policy's effective date.  CUAL's
Brief in Support ¶ 47.  The June 2017 application was incorporated into the policy,
*see* CUAL's Appendix to Motion at 000819-21, and the application was dated June
13, 2017, the day before the policy's inception.  See *id*. at 000787.  Additionally, the
June application was not complete because the application required details if the
applicant marked "yes" to question 28.  See *id*. at 000723 (June 2017 application).
Passages had marked "yes" in response to whether it had "[i]n the past 5 years . . .
been the subject of any suit . . . in connection with charges of discrimination or
harassment[.]"  *Id*.  The application instructed the applicant that "[a]ny 'Yes'
responses must be accompanied by details."  *Id*.  CUAL argues that if U.S. Risk
required Passages to follow the application's instructions, U.S. Risk would have
discovered that the *Begazo* lawsuit resulted in a $1,829,160 verdict against Passages

for employment-related claims.  CUAL's Brief in Support ¶ 52.  Alternatively, CUAL contends that U.S. Risk impermissibly relied on information from the March 2017 application, which included incomplete information about the *Begazo* suit[3] and other claims against Passages.  *Id*. ¶ 51.  If U.S. Risk bound the policy under the March 2017 application, it would be a violation of the BAA's requirement of a completed application within 30 days of the policy's effective date.  *Id*.

In turn, U.S. Risk argues that it properly quoted coverage for Passages in March 2017.  U.S. Risk's Response ¶ 58.  At that time, U.S. Risk had a completed application and at least five years of loss history.  *Id*.  When U.S. Risk bound the policy in June 2017, Passages had completed the September 2016, March 2017, and June 2017 applications plus eight supplemental claim forms, none of which contained the *Begazo* verdict.  *Id*. ¶ 17.  U.S. Risks argues that it was entitled to rely on Passages' representations in the applications because Passages was obligated to:  (1) notify U.S. Risk or its brokers "if any significant change"[4] occurred before a policy

---

[3]       At the time the March 2017 application was filled out, the *Begazo* suit had gone to trial, and the jury had returned a verdict against Passages for over $1.8 million dollars.  *See* CUAL's Appendix to Motion at 000395.  But the *Begazo* court had not yet entered a final judgment.  CUAL's Reply ¶ 12.

[4]       CUAL's Appendix to Motion at 000387 (September 2016 application); 000454 (March 2017 application).

- 19 -

was issued, and (2) "not omit or suppress or misstate any material facts[.]"[5]  U.S. Risk's Response ¶¶ 16-17.

The BAA chose Texas law to interpret the contract, CUAL's Appendix to Motion at 000010, and the parties do not dispute that Texas law governs the BAA. *See* CUAL's Brief in Support ¶ 27; U.S. Risk's Response ¶ 37.  Under Texas law, contract interpretation is purely a legal issue when the contract is not ambiguous. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (citing *Empire Fire & Marine Ins. Company v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000)).  "[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Gonzalez*, 394 F.3d at 392 (quoting *Amoco Production Company v. Texas Meridian Resources Exploration, Inc.*, 180 F.3d 664, 669 (5th Cir.1999)).  A court's "primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *James Construction Group, LLC v. Westlake Chemical Corporation*, 650 S.W.3d 392, 403 (Tex. 2022) (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018)).  To determine the parties' intent, courts construe contracts to give effect to each of its terms and to avoid rendering any term meaningless.  *Gonzalez*, 394 F.3d at 392.

---

[5]      *Id*. at 000724 (June 2017 application) (cleaned up).

In doing so, courts first must determine whether a contract's meaning is ambiguous.  "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."  *National Union Fire Insurance Company of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  A written contract is ambiguous if its language "is subject to two or more reasonable interpretations," but the contract is not ambiguous if it is "so worded that it can be given a definite or certain legal meaning."  *Id*.  Mere disagreement between the parties about the correct interpretation of the term will not render the term ambiguous; nor will it transform the issue of law into an issue of fact.  *D.E.W., Inc. v. Local 93, Laborers' International Union of North America*, 957 F.2d 196, 199 (5th Cir. 1992) (citations omitted).  Further, "[t]he language of a contract must be read in the light cast by industry practice in which it arises."  *APS Capital Corporation v. Mesa Air Group, Inc*., 580 F.3d 265, 271 (5th Cir. 2009).

Notably, the parties do not contend that the BAA is ambiguous.  Instead, the parties dispute what a "completed application" constitutes.  *See* Plaintiff's Reply in Support of its Motion for Summary Judgment ("U.S. Risk's Reply") (docket entry 70) ¶ 35; CUAL's Reply ¶ 8.  U.S. Risk argues that because Passages CEO Pax Prentiss signed and answered all the questions in the June 2017 application, the application was "completed."  U.S. Risk's Reply ¶¶ 35-36.  CUAL contends that the

- 21 -

signed June 2017 application was not "completed" because there was missing information that is "responsive to [the application's] question 28[.]" CUAL's Reply ¶ 8.  Question 28 asks if the applicant has been the subject of an employment-related lawsuit, and because Passages had claims against it, the application instructed that it must be "accompanied by details," which would include the *Begazo* verdict and updated information on the other pending claims from the March 2017 application. See *id.*; *see also* CUAL's Appendix to Motion at 000723.

The BAA does not define what the term "completed application" means.  In fact, the September 2016 and March 2017 applications are on different forms than the June 2017 application.  *Compare* CUAL's Appendix to Motion at 000384-390 (September 2016 application) and 000451-454 (March 2017 application), *with* CUAL's Appendix to Motion at 000722-724 (June 2017 application).  The September 2016 and March 2017 applications were submitted on an Admiral Insurance Company Proposal form, see *id.* at 000384-390, 000451-454, whereas the June 2017 application was submitted on a U.S. Risk form, see *id.* at 000722-724. The Admiral Insurance Company form instructs applicants to fill out a supplemental claim form or provide the following claims information by attachment:  date the claim was first made, claimant's name, the allegation, the claim's current status, the demand amount, any settlement, and attorneys fees.  *Id.* at 000386, 000453.  By contrast, the U.S. Risk form only requires that "[a]ny 'Yes' responses must be

accompanied by details." *Id*. at 000723.  There are no specific requirements for providing claims details according to the U.S. Risk application form.  See *id*.  Thus, Passages could provide the claim details in any manner, including the extensive supplemental claim forms from the March 2017 application and other information U.S. Risk had on file when writing the policy.

Nothing in the BAA suggests that U.S. Risk could not use information it gathered in previous applications.  *See generally* CUAL's Appendix to Motion at 000001-121 (the BAA).  The only requirements for an application under the BAA are that it be "completed" and that the form "be agreed by [CUAL] prior to use[.]"  *Id*. at 000031.  And when the BAA was renewed on June 1, 2017, between the March and June 2017 applications, the only relevant change to the BAA was that "[a]ll accounts to be submitted to lead underwriter for approval."  U.S. Risk's Motion for Summary Judgment ¶ 8.[6]  There is no evidence suggesting that U.S. Risk's application form was inadequate for not giving specific requirements or supplemental forms for claims

---

[6]       U.S. Risk contends that it offered to submit Passages' application for approval, but CUAL waived its rights to do so.  U.S. Risk's Motion for Summary Judgment ¶ 46.  Jacobs, U.S. Risk's vice president, had emailed a CUAL affiliate, Oxford Insurance Brokers, on June 19, 2017.  U.S. Risk's Appendix to Motion at 000999.  U.S. Risk contends that CUAL declined to review Passages' application and waived its right to check the application.  U.S. Risk's Motion for Summary Judgment ¶ 46.  CUAL does not dispute this point, but there is no reply to Jacob's email in the record that would support U.S. Risk's claim that CUAL "waived" its ability to complain about the Passages policy's underwriting.  The BAA also does not support that CUAL waived any rights in this suit by not reviewing the policy in June 2017.  *See generally* CUAL's Appendix to Motion at 00001-121 (the BAA).

history.  Although CUAL does not argue that the U.S. Risk form used for the June 2017 application is objectionable, the U.S. Risk form does not have an area for Passages, or any applicant, to include loss information on the application itself.  *See* CUAL's Appendix to Motion at 000722-726.  Because the BAA did not require U.S. Risk to obtain applications in any particular format, the court concludes that U.S. Risk fulfilled its obligations under the BAA with the June 2017 application and the previous applications it had on file.  *See* CUAL's Appendix to Motion 000001-121 (the BAA).

This conclusion is consistent with the court's goal to give contractual terms "their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *American National General Insurance Company v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Puckett v. U.S. Fire Insurance Company*, 678 S.W.2d 936, 938 (Tex. 1984)).  Webster's Dictionary defines "complete" as "possessing all necessary parts[.]" *Complete*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, (3rd ed. 1986).

Here, Passages answered all of the questions on the June 2017 application and had provided loss information to U.S. Risk throughout its three applications.  *See* CUAL's Appendix to Motion at 000723, 000384-390 (September 2016 application), 000451-454 (March 2017 application).  CUAL advocates for the court to interpret the "completed" requirement to include an accurate loss history, which would have

necessarily included the *Begazo* verdict.  *See* CUAL's Response ¶¶ 13-16; *see also* CUAL's Reply ¶ 6.  But the BAA does not require that U.S. Risk obtain an accurate loss history because the BAA only requires U.S. Risk to obtain "[a] completed application[.]"  See *id*. at 000107.  While the BAA's underwriting guidelines require five year loss history to offer terms and pricing, *id.* at 000107, there is no obligation for U.S. Risk to verify that the information furnished in the applications is accurate, see *id.*

Between the June 2017 application and the supplemental claim forms from the March 2017 application, U.S. Risk had the necessary information to write the policy. The BAA's underwriting guidelines look at the following factors to determine pricing and terms of employment practices liability insurance:  industry, claims history, location, human resources and risk management procedures.  CUAL's Appendix to Motion at 000107.  U.S. Risk had all of the necessary information between the March 2017 and June 2017 applications.  Thus, U.S. Risk had a "completed" application when it bound the policy, even if Passages did not provide an accurate loss history.

Additionally, the court declines U.S. Risk's invitation to hold that a "completed application" is the equivalent of a signed application because the BAA requires "a completed application *signed* and dated within thirty days of the effective date."  CUAL's Appendix to the Motion 000107 (emphasis added).  This would run

afoul of Texas law and render the term "signed" meaningless if the BAA required a "[signed] application signed and dated[.]"  See *Gonzalez*, 394 F.3d at 392 ("In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.").

To further support the court's conclusion, the court considers the BAA in light of industry practices.  See *APS Capital Corporation*, 580 F.3d at 271.  To support its motion for summary judgment, U.S. Risk's experts have testified that the June 2017 application was "completed" by insurance industry standards.  Supplemental Appendix in Support of Plaintiff's Motion for Summary Judgment (docket entry 75) at 001491, 001508, 001740-43.  U.S. Risk's first expert Donald W. Bendure ("Bendure") testified in his deposition that the June 2017 application was completed although "[U.S. Risk] got different information at different times.  There were actually three applications filled out . . . Loss information was there. The claims history was there.  The location was there.  The resources manuals were there.  The five years of loss experience was actually seven[.]"  *Id.* at 001491 (Bendure's deposition).  In the commercial insurance industry, Bendure testified, "completed generally means signed and dated."  *Id.* at 001508.  U.S. Risk's other expert, Olie R. Jolstad ("Jolstad") similarly testified that "when an underwriter receives an application which is missing requested information," it is industry practice for the underwriter to proceed "if the underwriter deems that the information that's missing

- 26 -

isn't necessary to what it needs . . . or the underwriter can still proceed with binding coverage[.]" *Id.* at 001741 (Jolstad's deposition). Jolstad also testified that the June 2017 application is completed "even though [ ] there is language that says a yes response must be accompanied by details[.]" *Id.* at 001743-1744.

CUAL does not offer rebuttal expert testimony, and only attacks the credibility of U.S. Risk's experts. *See* CUAL's Reply ¶¶ 7-8. CUAL contends that Jolstad testified that missing information from the June 2017 application "was not material to the application." *Id.* n.3. CUAL cites to the Jolstad deposition, but at no point did Jolstad testify that the *Begazo* verdict was immaterial when issuing the Passages policy. *See* Supplemental Appendix in Support of Defendant's Response to U.S. Risk's Motion for Summary Judgment (docket entry 77) at 000929-30. Instead, Jolstad affirmed that "[w]hen an underwriter receives an application which is missing requested information . . . the underwriter under the terms of the BAA can simply decide not to get that information in order to have a completed application[.]" *Id.* at 000930. Jolstad testified that the BAA did not require U.S. Risk underwriters to obtain the missing information, and Passage's failure to provide missing information was grounds for rescission. See *id.* at 000930, 935. This position is not "self-contradicting and illogical," as CUAL contends, because the there are two separate contracts at issue with different obligations. See *id.* Passages' omissions or

misrepresentations in acquiring the policy does not necessarily mean that U.S. Risk violated the BAA.

For the reasons discussed above, the court concludes that U.S. Risk did not breach the BAA by issuing the Passages policy. Because interpretation of a unambiguous contract is purely a legal issue, *Gonzalez*, 394 F.3d at 392, there is no genuine issue of material fact and U.S. Risk is entitled to judgment as a matter of law. Additionally, the court does not need to reach the causation element to dispose of this claim. Therefore, the court grants U.S. Risk's motion for summary judgment on the breach of contract claim and denies CUAL's cross-motion on the same claim.

### D. Tort Claims and the Economic Loss Rule

Next the court will address CUAL's tort claims, but first the court must consider if the economic loss rule bars those claims. As U.S. Risk argues, "Texas does not recognize a cause of action for negligent breach of contract." U.S. Risk's Reply ¶ 41. The rule U.S. Risk alludes to is better known as the economic loss rule. The court must consider this issue first because if Texas law bars CUAL's tort claims as a matter of law, U.S. Risk would be entitled to summary judgment on those claims.

The economic loss rule "precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas*

*Plumbing Company*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam).  The economic

loss rule does not bar all tort claims when there is a contractual dispute, as "there is

not one economic loss rule broadly applicable throughout the field of torts, but

rather, several more limited rules that govern recovery of economic losses in selected

areas of the law." *Sharyland Water Supply Corporation v. City of Alton*, 354 S.W.3d

407, 415 (Tex. 2011) (quoting Vincent R. Johnson, *The Boundary-Line Function of the

Economic Loss Rule*, 66 WASH. & LEE L. REV. 523, 534 (2009)).  Accordingly,

application of the rule depends on a case-by-case analysis.  *McCaig v. Wells Fargo Bank

(Texas), N.A.*, 788 F.3d 463, 474 (5th Cir. 2015) (citing *LAN/STV v. Martin K. Eby

Construction Company*, 435 S.W.3d 234, 235 (Tex. 2014)).

Contracts may form duties in either contract or tort, or both simultaneously.

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  When a party

seeks damages for breach of a contractual duty, as opposed to a duty imposed by law,

tort damages are unavailable.  *Southwestern Bell Telephone Company v. DeLanney*, 809

S.W.2d 493, 494-95 (Tex. 1991).  In those cases, losses are more appropriately

addressed though breach of contract claims than tort.  *Sharyland Water Supply

Coporation*, 354 S.W.3d at 418.  Any claim based on allegations that a party failed to

perform duties subsumed in a contract cannot support a negligence claim.  *Springs

Window Fashions Division, Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 868 (Tex. App. –

Austin 2006, pet. granted, judgm't vacated w.r.m.).  In sum, the economic loss rule

- 29 -

bars negligence claims "when there would be no basis for relief if the parties had not entered into a contract and both parties' performance had been rendered gratuitously." *Correct RX Pharmacy Services, Inc. v. Cornerstone Automation Systems, L.L.C.*, 945 F.3d 423, 429 (5th Cir. 2019).

Texas courts have recognized, however, that the economic loss rule does not preclude tort claims that are independent of a contract. See *Formosa Plastics Corporation USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46-47 (Tex. 1998). This includes claims for "negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action[.]" *Sharyland Water Supply Corporation*, 354 S.W.3d at 418-19 (citations omitted). When determining whether to apply the rule, a court must consider the duty's source, whether the duty arose solely out of the contract or the common law, and the nature of the remedy sought. *Formosa Plastics Corporation*, 960 S.W.2d at 45 (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (Tex. 1996) (per curiam)). A tort claim must have an independent legal duty and independent injury, which are discrete requirements. *Correct RX Pharmacy Services, Inc.*, 945 F.3d at 429 (citing *D.S.A., Inc. v. Hillsboro Independent School District*, 973 S.W.2d 662, 663 (Tex. 1998) (per curiam)).

The court will first consider whether CUAL's fiduciary duty claim is barred by the economic loss rule.  For the sake of this threshold inquiry, the court assumes that U.S. Risk owed CUAL fiduciary duties.

Fiduciary duties, under Texas law, are independent from contractual duties. See *James J. Flanagan Shipping Corporation v. Del Monte Fresh Produce N.A., Inc*., 403 S.W.3d 360, 365-66 (Tex. App. – Houston [1st Dist.] 2013, no pet.).  In *Flanagan*, the court held that a breach of fiduciary duty claim was not precluded by the economic loss rule because the contractual duties at issue were independent of the fiduciary duties.  *Id*.  Flanagan was a shipping corporation that contracted to provide stevedoring services to the defendant Del Monte, a produce company.  *Id*. at 362. After performance issues arose, a Flanagan employee named Bradford began influencing Del Monte to replace Flanagan with Bradford's former employer.  *Id*. at 363.  In doing so, Bradford provided Flanagan's proprietary information that enabled the other company to out-bid Flanagan and receive the next contract with Del Monte.  *Id*.  In relevant part, Flanagan sued Del Monte for encouraging Bradford's breach of fiduciary duty.  *Id*. at 364.

The economic loss rule did not apply to Flanagan's claim because the fiduciary duty owed by Bradford to Flanagan was independent of the stevedoring contract between Del Monte and Flanagan.  *Id*. at 366.  Flanagan's injury was likewise independent because Flanagan lost the bid to renew the stevedoring contract, which

is outside the scope of the expired stevedoring contract.  See *Flanagan*, 403 S.W.3d at 366.  Flanagan was seeking lost profits that it would have earned had Del Monte not tortiously encouraged Bradford to disclose Flanagan's proprietary information, which is distinct from typical expectation damages in contract claims.  See *id*.  Flanagan could not claim loss profits for the renewal contract on the theory that Del Monte breached the expired contract; therefore, the injury is also independent from the contract.  See *id.*

Here, as in *Flanagan*, CUAL alleges that U.S. Risk breached a duty that is independent of the BAA.  CUAL claims that U.S. Risk violated fiduciary duties that U.S. Risk owed as its agent, a relationship created by both the common law and the parties' agreement.  Although the BAA sets certain forth fiduciary duties for U.S. Risk, *see* CUAL's Appendix to Motion at 000027-28, 40, had the BAA not existed and U.S. Risk written polices gratuitously for CUAL, U.S. Risk would still have owed fiduciary duties to CUAL as its principal.  *See* RESTATEMENT (THIRD) OF AGENCY § 8.08, cmt. (e) (2006) ("A person who gratuitously assents to acting as an agent acts as a fiduciary within the scope of the agency relationship.").  CUAL's injury is also independent of the BAA because CUAL seeks the amount it paid to Passages for the claims in the four lawsuits, not the commission paid pursuant to the BAA.  *See* CUAL's Amended Answer and Counterclaims ¶ 78.  Therefore, the economic loss rule does not bar CUAL's fiduciary duty claim.

The court will next consider whether CUAL's negligence claim is barred by the economic loss rule. Unlike any fiduciary duty owed by U.S. Risk, there is no duty independent of the BAA for U.S. Risk to write the Passages policy. See *DeLanney*, 809 S.W.2d at 494-95 (when the duty solely arose from a contractual obligation to publish advertisement, there is only a breach of contract claim); see also *Jim Walter Homes*, 711 S.W.2d at 618 (when the only injury was that parties to a construction contract did not get the house they contracted for, there is only a breach of contract claim).

This is case is similar to *Colbert v. Wells Fargo Bank, N.A.*, 850 Fed. Appx. 870, 877 (5th Cir. 2021) (per curiam). In *Colbert*, the plaintiffs asserted a negligence claim against Wells Fargo, claiming the bank failed to correct misleading statements about the plaintiffs' loan and use reasonable care when providing information to the plaintiffs. *Id*. at 876. The Fifth Circuit held that because "[t]he source of any duty owed by Wells Fargo is its mortgage contract with Plaintiffs," these duties "do not arise from a separate common-law duty and would not give rise to liability independent of the fact that contract exists between the parties." *Id*. at 877 (internal citations omitted).

Similarly, CUAL claims U.S. Risk negligently performed its duties under the BAA. CUAL's Amended Answer and Counterclaim ¶ 82. The BAA is the source of the relationship and duties, and typically under Texas law, the economic loss rule

precludes negligent-performance claims unless the negligence caused physical harm to persons or tangible things.  See *DeLanney*, 809 S.W.2d at 495, n.2 (citing W. PAGE KEETON, ET. AL, PROSSER AND KEETON ON THE LAW OF TORTS § 92 (5th ed. 1984)); see also *Montgomery Ward & Company v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947) (holding that when a repairman caused a house to burn down, the repairman was liable in tort for negligently burning down the house and contract for failure to repair the water heater).  Without the BAA, there would be no duty that would give rise to a negligence claim.  See, *e.g.*, *Torrington Company v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) (citing RESTATEMENT (SECOND) OF TORTS § 314 (1965) ("Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances.").  Therefore, the economic loss rule bars CUAL's negligence claim.

Accordingly, U.S. Risk's motion for summary judgment on the negligence claim is granted because CUAL's claim is barred as a matter of law, and CUAL's motion is denied.  The court will next address the parties' cross-motions on the remaining tort claim.

E.  Breach of Fiduciary Duties

In their cross-motions for summary judgment, U.S. Risk and CUAL each argue they are entitled to summary judgment on CUAL's breach of fiduciary duty claim. To succeed on a breach of fiduciary duty claim, a claimant must prove the following

three elements:  (1) the existence of a fiduciary duty, (2) the breach of that duty, and

(3) an injury to the principal or benefit to the agent caused by the agent's breach.

*Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. – Houston [14th Dist.] 2008, no

pet.) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. – Dallas 2006, pet.

denied)); *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App. – Texarkana 2004, no

pet.).  Here, the parties contest all three elements.  Accordingly, the court will first

address whether a fiduciary duty exists between the parties.

### 1.  *Whether a Fiduciary Relationship Existed*

The existence of a fiduciary duty is a question of law.  *National Plan*

*Administrators, Inc. v. National Health Insurance Company*, 235 S.W.3d 695, 700 (Tex.

2007) (citing *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam)).  An

agency relationship imposes certain fiduciary duties on the parties, although not all

contractual obligations give rise to fiduciary duties.  *National Plan*, 235 S.W.3d at

700, 702.  Courts applying Texas law take all aspects of the agency relationship into

consideration when determining the nature and scope of the fiduciary duties between

the parties.  *Id*. at 700; see also *Johnson v. Brewer* & *Pritchard, P.C.*, 73 S.W.3d 193,

202-03 (Tex. 2002) (holding that the scope of an attorney's fiduciary duties to his

firm is limited by professional ethics).

U.S. Risk argues that it did not owe fiduciary duties to CUAL for several

reasons, which the court finds unconvincing.  First, U.S. Risk argues that there is no

duty for U.S. Risk to investigate the representations Passages made in its application.
U.S. Risk Brief in Support at 11-13.  This argument goes to whether U.S. Risk
*breached* a fiduciary duty by not investigating Passages' representations on its June
2017 application instead of the *existence* of a fiduciary duty issue.  See *id*. at 11.
Second, U.S. Risk argues that the Texas court of appeals' opinion in *Pacheco* precludes
a fiduciary duty between an agent and insurer.  *Id*.  But U.S. Risk's reliance on
*Pacheco* is misplaced.

 *Pacheco* does not hold, as U.S. Risk contends, that an agent never has a
fiduciary duty to make an independent investigation into an insured's application.
See *Banner Life Insurance Company v. Pacheco*, 154 S.W.3d 822, 831 (Tex. App. –
Houston [14th Dist] 2005, no pet.).  Instead, *Pacheco* is limited to its facts.

 Pacheco, an insurance agent, sold a life insurance policy to Thomas Cherry
("Cherry"), who was shortly thereafter diagnosed with stage-four cancer.  *Id*. at 824-
25.  When Cherry died, Banner Life sued Pacheco for the policy limit because
Pacheco did not inquire about Cherry's health when he personally delivered the
policy.  *Id*. at 824-25, 831.  The *Pacheco* jury found that the Pacheco did not breach
his fiduciary duty to Banner Life.  *Id*. at 831.  On appeal, the *Pacheco* court held that
the evidence "undisputably shows that [the insured] was not diagnosed with cancer"
when the policy was issued, so Pacheco could not have discovered that Cherry had
cancer.  *Id*.  While the *Pacheco* court held there was a fiduciary duty between Pacheco

and Banner Life, as agent and principal, the court concluded there was sufficient evidence to support that Pacheco did not breach a fiduciary duty to the insurance company. *Id.* But *Pacheco* does not hold that insurance agents are not fiduciaries for insurance companies under Texas law. See *id*. Instead, *Pacheco* recognizes this relationship. *Id.*

Next, U.S. Risk argues that *National Plan* precludes the existence of a fiduciary duty. U.S. Risk's Reply ¶ 40. In *National Plan*, the Supreme Court of Texas noted that "a contractual obligation does not generally rise to a fiduciary duty," and then held that no duty existed between the parties. *National Plan*, 235 S.W.3d at 702.[7] But *National Plan* is not dispositive because the Court's holding is limited to the contract at issue. See *id*. at 703. The Court held that it would not "impose a general fiduciary duty on [the defendant] when the parties expressly agreed that [the defendant] could take actions that would be in violation of such a duty." *Id*. Whereas, here, the BAA does not "expressly agree[]" to allow U.S. Risk to engage in actions that would violate a fiduciary duty. Contrary to U.S. Risk's arguments,

---

[7]    U.S. Risk's reply brief cites to *National Plan* for the proposition that courts cannot impose fiduciary duties in a business transaction unless an informal relationship existed before the agreement. U.S. Risk's Reply ¶ 40. *National Plan* does not discuss a pre-existing relationship factor, although the Court did do so in *Schlumberger Technology Corporation v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). To the extent that *National Plan* discusses "an arms-length business transaction," the Court does so only to illustrate that if the plaintiff wished to have an exclusivity agreement with the defendant, it had the freedom of contract to do so. See *National Plan*, 235 S.W.3d at 702-03.

*National Plan* holds that the scope of an agent's fiduciary duties is defined by "not only the nature and purpose of the relationship, but also agreements between the agent and principal." See *id.* at 700. But *National Plan* does not preclude U.S. Risk's fiduciary duty towards CUAL. See *id.*

U.S. Risk also cites *Schlumberger* to support its contention that Texas law does not recognize a fiduciary duty without a preexisting relationship. U.S. Risk's Reply ¶ 40. The Texas Supreme Court in *Schlumberger* declined to impose fiduciary duties based on *confidential relationships* in a business transaction unless the relationship existed "prior to, and apart from, the agreement made the basis of the suit." *Schlumberger Technology Corporation v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997) (citing *Transport Insurance Company. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995)). But CUAL does not contend that U.S. Risk owes fiduciary duties based on a confidential relationship; instead, CUAL's claims rest solely on formal fiduciary

duties, not informal.[8]  *See* CUAL's Brief in Support ¶ 32; CUAL's Amended Answer and Counterclaim ¶¶ 76-78.

For its part, CUAL contends that the BAA creates a formal fiduciary relationship because the contract creates an agency agreement between U.S. Risk and CUAL.  CUAL Brief in Support ¶ 32.  U.S. Risk was undisputedly authorized to write insurance policies for CUAL, which means U.S. Risk was an agent of CUAL. *Id*. ¶¶ 32-34.  In "every transaction made on behalf of its principal," an agent owes a "duty of good faith and fair dealing." *American Indemnity Company v. Baumgart*, 840 S.W.2d 634, 639 (Tex. App. – Corpus Christi 1992, no writ).  Further, U.S. Risk

---

[8]      There are two types of fiduciary relationships in Texas law:  formal fiduciary relationships that arise as a matter of law and informal fiduciary relationships, otherwise known as "confidential relationships." *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App. – Dallas, 2010, no pet.).  Formal fiduciary relationships encompass relationships such as agency and partnerships. *Kinzbach Tool Company v. Corbett-Wallace Corporation*, 160 S.W.2d 509, 513 (Tex. 1942) (principal/agent); *Johnson v. Peckham*, 120 S.W.2d 786, 787 (Tex. 1938) (partners). Informal fiduciary relationships arise when "one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one." *Schlumberger*, 959 S.W.2d at 176.

agreed to abide by a duty of loyalty and care in the BAA.[9]  CUAL's Appendix to Motion at 000027-28, 40.

Applying *National Plan*, the court concludes as a matter of law that there was a fiduciary relationship between U.S. Risk and CUAL.  See *National Plan*, 235 S.W.3d at 702-03.  The BAA undisputedly created an agent-principal relationship between the parties that allowed U.S. Risk to write insurance policies for CUAL.  *See generally* CUAL's Appendix to Motion a 000001-121 (the BAA).  Agents have long been considered the fiduciaries of their principals under Texas law.  See *Kinzbach Tool Company v. Corbett-Wallace Corporation*, 160 S.W.2d 509, 513 (Tex. 1942).  And more specifically, Texas courts recognize that insurance agents owe fiduciary duties to the insurer.  See, *e.g.*, *Hartford Casualty Insurance Company v. Walker County Agency, Inc.*, 808 S.W.2d 681, 687-88 (Tex. App. – Corpus Christi-Edinburg 1991, no writ); *Southland Lloyd's Insurance Company v. Tomberlain*, 919 S.W.2d 822, 831 (Tex. App. – Texarkana 1996, writ denied).

---

[9]     "The Coverholder [U.S. Risk] shall not take any step(s) or undertake any act(s) or omit to do anything in relation to the services to be provided by it under the [BAA], including failing to act fairly to insured's, which is likely to be detrimental to the reputation of the Underwriters."  CUAL's Appendix to Motion at 000027-28.  "The Coverholder [U.S. Risk] must act in what it believes to be the interests of the Underwriters and ensure that it has no actual or potential conflicts of interest with the Underwriters which may impair the Coverholder's performance of its duties under the [BAA]."  *Id*. at 000040.

Under the "nature and purpose of the relationship" along with the

"agreement[] between the agent and principal," *National Plan*, 235 S.W.3d at 700,

U.S. Risk owed fiduciary duties to CUAL.  The BAA expressly requires U.S. Risk to

abide by a duty of loyalty and care when acting as CUAL's agent.  *See* CUAL's

Appendix to Motion 000027-28, 40.  Additionally, U.S. Risk's officers recognized

this duty of loyalty and care in writing insurance policies on CUAL's behalf.  Randall

Goss ("Goss"), U.S. Risk's CEO, agreed in his deposition that it was U.S. Risk's

understanding that it had "whatever authority and discretion to ask questions and

gather information as it sees to be prudent when making its decision as to whether or

not to offer terms of coverage[.]" *Id*. at 000356-57.  Goss further testified that

"there's an expectation that our underwriters do a good job." *Id.* at 000359.  The

underwriter for the Passages' account, Duvall, agreed that U.S. Risk underwriters are

the "eyes and ears" of CUAL in writing policies.  *Id*. at 000277.

As a matter of law, a principal-agent relationship existed between CUAL and

U.S. Risk.  The BAA authorized U.S. Risk to write insurance policies on its behalf,

and U.S. Risk does not dispute that it was CUAL's agent.  Within the scope of the

BAA, the court concludes that U.S. Risk owed fiduciary duties to CUAL.

### 2.  *Breach of Fiduciary Duty*

Regarding the breach element, CUAL argues it is entitled to summary

judgment because U.S. Risk wrote the Passages policy without a complete loss

history.  CUAL's Brief in Support ¶¶ 41-44.  Passages had listed the *Begazo* suit in both the September 2016 and March 2017 applications, and in the March 2017 application, which was submitted after the *Begazo* trial, Passages stated some issues were tried but omitted the result of the trial.  *Id*. ¶ 43.  When Passages signed the June 2017 application, U.S. Risk did not ask for an update on any outstanding claims, including the outcome of the *Begazo* trial.  *See* CUAL's Appendix to Motion at 000310-312.  U.S. Risk's underwriter did not look at the court's docket to determine whether a verdict or judgment had been entered.  *Id*. at 000289-290 (Duvall's deposition).  CUAL contends that had U.S. Risk asked for an update on the *Begazo* trial, it would have learned that judgment had been entered against Passages in the amount of $2,267,369.16 plus interest.  CUAL's Brief in Support ¶ 43.  Instead, U.S. Risk bound the Passages policy without obtaining an application with an accurate loss history.  *Id*.  According to an email written by U.S. Risk's vice president Jacobs, U.S. Risk would have declined the risk had it known of the *Begazo* judgment.  CUAL's Appendix to Motion at 000729-730 (Jacob's October 2018 email).  Because U.S. Risk did not take measures to discover the adverse verdict, CUAL argues that U.S. Risk breached its fiduciary duty by placing its own pecuniary interest over CUAL's to collect a commission.[10]  CUAL's Reply ¶¶ 27-28.

---

[10]     There is no citation to the record that supports CUAL's assertion that U.S. Risk prioritized its interest in the commission over CUAL's interest of writing suitable policies.

Although CUAL provides ample evidence of what U.S. Risk could have done to obtain an accurate loss history when writing this policy, CUAL's motion falls short of the summary judgment burden.  Considering the evidence in the light most favorable to U.S. Risk, see *Anderson*, 477 U.S. at 249, a reasonable juror could find that U.S. Risk did not breach its fiduciary duty when it wrote the Passages policy.  A reasonable trier of fact could find, for example, that U.S. Risk reliance on Passages' application was not a breach of its fiduciary duties owed to CUAL because U.S. Risk misunderstood that the *Begazo* suit "had been let out on summary judgment."  *See* CUAL's Appendix to Motion at 000729 (Jacob's October 2018 email).  Therefore, there is a genuine issue of material fact on the issue of breach, and CUAL's motion is denied.

Because the court examines "each party's motion independently," *DataTreasury Corporation*, 823 F.3d at 1011, on cross-motions for summary judgment, the court now turns to U.S. Risk's motion regarding the breach element.

In its briefing, U.S. Risk does not specifically address the breach element.  But U.S. Risk argues that it has the right to rely on "the truthfulness of the answers given by an insurance applicant[.]"  U.S. Risk's Brief in Support at 13 (citing *Commercial Life Insurance v. Lone Star Life Insurance*, 727 F. Supp. 467, 471 (N.D. Ill. 1989)).  U.S. Risk also attempts to distinguish this case from several Texas intermediate court opinions relied upon by CUAL.  U.S. Risk's Response ¶¶ 40-42.  U.S. Risk argues

that because it did not commit specific acts, CUAL cannot succeed on its fiduciary duty claim.  *Id*.  The court construes U.S. Risk's reliance on these factual differences as an argument that U.S. Risk could not have breached its fiduciary duties under Texas law.  These cases, however, do not support U.S. Risk's motion for summary judgment and instead support the conclusion that there is a genuine issue of material fact on the breach element of this claim.  The court will address two of these cases to illustrate why a fact issue exists on the breach element.

One case U.S. Risk discusses is *Tomberlain*, and U.S. Risk argues that because *Tomberlain* involved an agent who prepared an application containing misrepresentations, that U.S. Risk did not breach its fiduciary duties because it did not prepare the June 2017 application, Passages did.  *See* U.S. Risk's Response ¶ 40; *see also Tomberlain*, 919 S.W.2d at 831.  But *Tomberlain* does not hold that an agent breaches his fiduciary duty only when he prepares the application with the misrepresentations.  See *Tomberlain*, 919 S.W.2d at 831.  Instead, the *Tomberlain* court held that when an agent prepares an application with misrepresentations, there is a factual issue whether the agent breached its fiduciary duties.  *Id*.  *Tomberlain* supports that there is a fact issue in this case, not that Texas law precludes CUAL's fiduciary duty claim.  See *id*.

U.S. Risk also discusses *Baumgart* for a similar, fact-distinguishing reason.  *See* U.S. Risk's Response ¶ 41; *see also Baumgart*, 840 S.W.2d at 639.  But as in

*Tomberlain*¸ the *Baumgart* court merely holds that a fact issue exists whether the agent breached his fiduciary duties to the insurance company when the agent helped prepare a misleading insurance application.  See *Baumgart*, 840 S.W.2d at 639-40 ("Baumgart did not negate American's allegations . . . [we] therefore hold that the trial court erred in granting summary judgment[.]").[11]

U.S. Risk does not cite evidence in the record nor dispositive case law to support its motion for summary judgment, and therefore, its motion for summary judgment on the breach element of this claim is also denied.

### 3.  *Injury to Principal or Benefit to Agent*

For the final element, CUAL contends that there was both a benefit to the agent and an injury to the principal.  CUAL's Brief in Support ¶ 53.  Under the Passages policy, CUAL paid the $2 million policy limit to defend and settle the four lawsuits.  *Id*.  CUAL was obligated to pay to defend these lawsuits because U.S. Risk bound Passages' employment liability insurance policy without an accurate loss history.  *Id*.  Additionally, U.S. Risk benefitted from binding the Passages policy in

---

[11]     U.S. Risk also discusses *Abetter Trucking Company v. Arizpe*, 113 S.W.3d 503 (Tex. App. – Houston [1st Dist.] 2003, no pet.), and *Certain Underwriters at Lloyd's, London v. A & D Interests, Inc*., 197 F. Supp. 2d 741 (S.D. Tex. 2002), which are similarly unpersuasive.  *See* U.S. Risk's Response ¶ 42.  *Arizpe* is an appeal of a jury verdict, and the court of appeals held there was sufficient evidence to support the jury verdict that an independent contractor, although he owed fiduciary duties, did not breach those duties.  *Arizpe*, 113 S.W.2d at 512-13.  And *A&D Interests* denies a motion to dismiss for failure to state a claim because insurance agents owe fiduciary duties to the insured party.  *A&D Interests, Inc*., 197 F. Supp. 2d at 752.

the form of a commission.  CUAL's Reply ¶ 28; *see also* CUAL's Appendix to Motion at 000007.

U.S. Risk argues that it did not proximately damage CUAL by issuing the Passages policy.  U.S. Risk's Brief in Support at 14-25.  Instead, CUAL voluntarily chose to pay the policy amount to Passages because CUAL did not rescind the policy or seek damages from Passages. *Id*. at 25-28.  Notably, U.S. Risk does not dispute that U.S. Risk benefitted from issuing the policy.

In fiduciary duty claims, there must be an injury to the principal or a benefit to the agent. *Lundy*, 260 S.W.3d at 501.  For the benefit inquiry, because CUAL's only evidence that U.S. Risk received a commission is the BAA itself, CUAL does not meet its summary judgment burden.  *See* CUAL's Appendix to Motion at 000007. Although the BAA entitles U.S. Risk to a commission, CUAL does not "cit[e] to particular parts of materials in the record," FED. R. CIV. P. 56 (c)(1)(A), to show that U.S. Risk was paid a commission.

Regarding injury, a claimant must show that a breach of fiduciary duty proximately caused the injury to the principal.  See *Brewer* & *Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 868 (Tex. App. – Houston [1st Dist.] 1999) (holding there is a fact issue whether a defendant breached his fiduciary duty and "whether any breach was a proximate cause of damages[.]"), *aff'd on other grounds*, 73 S.W.3d 193 (Tex. 2002); see also *Taylor Publishing Company v. Jostens, Inc.*, 216 F.3d 465, 487 (5th Cir. 2000)

(holding that parties must prove causation in breach of fiduciary duty claims).
Proximate cause is generally a question of fact. *First Assembly of God, Inc. v. Texas Utilities Electricity Company*, 52 S.W.3d 482, 493 (Tex. App. – Dallas 2001, no pet.).
Here, the court concludes that a factual dispute exists whether U.S. Risk's actions caused CUAL's injury and thus summary judgment is denied on this element.

In sum, CUAL's motion for summary judgment is granted on the first element of breach of fiduciary duty, but summary judgment is denied as to the other two elements. CUAL is entitled to summary judgment in part on the first element because the court concludes as a matter of law U.S. Risk owed a fiduciary duty to CUAL. Since factual issues exist on the second and third elements, the cross-motions for summary judgment are denied in part.

### F. U.S. Risk's Declaratory Judgment Claims

U.S. Risk seeks a declaratory judgment that: (1) the Passages policy provided no coverage for the four lawsuits; (2) U.S. Risk fully discharged its contractual duties under the BAA; and (3) CUAL voluntarily paid Passages for the four lawsuits. U.S. Risk's Amended Complaint ¶¶ 28-30, 32-33, 35. U.S. Risk and CUAL filed cross-motions for summary judgment on all three declaratory judgment claims. CUAL's Brief in Support ¶ 61; U.S. Risk's Brief in Support at 5, 14. The court has already addressed the second claim under CUAL's breach of contract claim, and

because U.S. Risk does not have the standing to assert the other two, the court grants CUAL's motion for summary judgment on those claims.

Whether coverage exists under the Passages policy and whether CUAL voluntarily paid Passages for the four lawsuits, are both contractual issues of the Passages policy, not the BAA. It is undisputed that U.S. Risk is not a party to the Passages policy. For U.S. Risk to have the capacity to litigate the Passages policy, it would have to be a third-party beneficiary.

Under Texas law, "[a] third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *MCI Telecommunications Corporation v. Texas Utilities Electricity Company*, 995 S.W.2d 647, 651 (Tex. 1999) (citations omitted). In determining whether a third party can enforce a contract, the contracting parties' intent controls. See *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975). Courts cannot create a third-party beneficiary contract by implication. *MCI Telecommunications Corporation*, 995 S.W.2d at 651. There is a presumption in Texas law that parties contracted for themselves unless it "clearly appears" that they intended a third party to benefit from the contract. *Id*. (citations omitted). This presumption is not overcome merely by the fact that the parties knew the third party would benefit from the contract. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex.

2017).  Incidental beneficiaries of a contract have no enforceable rights.  *Brunswick Corporation v. Bush*, 829 S.W.2d 352, 354 (Tex. App. – Fort Worth 1992, no writ). "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract."  *Sharyland Water Supply Corporation*, 354 S.W.3d at 421 (quoting *South Texas Water Authority v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam)).

U.S. Risk does not contend that it is a third-party beneficiary, and on the face of the Passages policy, there is no manifest intent for it to be one.  *See* CUAL's Appendix to Motion at 000783-823.  Although the Passages policy was signed by U.S. Risk's CEO, it is only done so "[o]n behalf of Underwriters at Lloyd's," CUAL's affiliates.  *Id*. at 000787.  U.S. Risk's commission is incidental to the Passages policy because CUAL and Passages did not bind the policy to solely benefit U.S. Risk. Further, there is nothing in the Passages policy that "clearly, fully and unequivocally expresses the parties' intent to contract directly for [U.S. Risk's] benefit."  See *First Bank*, 519 S.W.3d at 105. (internal citations and quotation marks omitted).  As a matter of law, U.S. Risk cannot assert claims based on the Passages policy, and therefore, CUAL's motion for summary judgment on U.S. Risk's remaining declaratory judgment claims is granted.

- 49 -

### III.  CONCLUSION

For the reasons stated above, summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  U.S. Risk's motion for summary judgment on the contract and negligence claims is **GRANTED**, and CUAL's cross-motion on those claims is **DENIED**.  U.S. Risk's motion on the remaining claims is **DENIED**.  For the fiduciary duty claim, CUAL's motion is **GRANTED IN PART** because the court concludes as a matter of law that U.S. Risk owed CUAL fiduciary duties.  The cross motions on the remaining elements of the fiduciary duty claim are **DENIED**, as genuine issues of material fact remain.  Finally, CUAL's motion for summary judgment on U.S. Risk's declaratory judgment claims is **GRANTED**.

**SO ORDERED**.

January 19, 2023.

**A. JOE FISH**
**Senior United States District Judge**

- 50 -